IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Joseph A. Buffolino, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 CV 50245 |
| v. ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Carolyn W. Colvin,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph A. Buffolino brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying him social security disability benefits. For the following reasons, the decision is affirmed.

### I. BACKGROUND[2]

On February 25, 2008, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging a disability beginning on June 30, 2006. R. 40-41, 551. He was 42 years old at the time of the alleged onset date. R. 21. On November 30, 2010, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Mr. O'Neill's request for benefits. R. 546-80. The same attorney representing Plaintiff in this

---

[1] Commissioner Carolyn W. Colvin has been automatically substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).
[2] The following facts are only an overview of the evidence provided in the administrative record.

1

action also represented him at the hearing. Plaintiff and Vocational Expert Margaret Ford ("VE") testified at the hearing.

Plaintiff testified that he was 46 years old at the time of the hearing. R.549. He received his GED and had lived with his mother for the past 14 years. R. 550. Plaintiff last worked in 2002, citing problems with his eye and neck. R. 552, 554. Plaintiff's work history from 1999 to 2002 included jobs as a sorter in a factory, grass cutter, forklift driver, and landscaper. R.554-57. Additionally, while Plaintiff was incarcerated from December 2006 until February 2008, he worked in the kitchen serving food. R. 568-69.

Plaintiff testified that around 2000, he lost his right eye, which resulted in problems with his depth perception. R. 552, 565. This sometimes caused Plaintiff to hit his head on low ceilings or drop things. R. 565. Plaintiff also testified that around the same time, he injured his neck when he lifted 300 pounds on his shoulder, which resulted in the need for a cervical spine fusion at C6-7. R. 552, 557, 570. Following the fusion, he suffered from persistent neck pain. R. 552. Plaintiff testified that the pain occurred on a daily basis, and he described it as "pins and needles" that occurred when he turned his neck or looked upward. R. 563. Plaintiff rated the pain, even with pain medication, at a six or seven out of ten since 2009. R. 563-64. Due to the pain, he would lie in bed and watch television for seven and a half hours a day between the times of 8 a.m. and 5 p.m. R. 558. As of June 2006, Plaintiff spent four or five hours lying down during the day. R. 559.

Plaintiff also testified that for the past few years he has had pain in his left shoulder. R. 564-65. He explained that his left arm would go numb if he moved his neck in a certain direction. R. 564. Plaintiff also complained about fatigue, night sweats and dizziness, which started sometime in 2009. R. 566, 568. The dizziness occurred once or twice a month. R. 571. Plaintiff also suffered from hepatitis C, stage III kidney disease and reported a constant ringing in his ears, though the ringing did not hinder his ability to hear and understand those around him. R. 567-68, 572. Plaintiff also testified that in 2009 he broke his left wrist, cracked his rib and received a laceration to his head when he fell. He was also in a car accident in 2009 and received whip-lash to his neck and a bruised leg. R. 553-54.

According to Plaintiff, at the time of the hearing he could walk or stand for 30 to 45 minutes before getting tired. R. 566, 573. His doctor told him not to lift more than 10 pounds. R. 572. Additionally, Plaintiff could only sit for 30 minutes at a time before his "butt gets numb." R. 572. He did not do any household chores, but he would accompany his mother shopping once every few months. R. 549-50, 559-60. Plaintiff would also leave the house two or three times a month for doctors' appointments. R. 561.

The VE testified that Plaintiff's past relevant work would be considered unskilled and ranged from light to heavy exertion. R. 579-80. The ALJ posed the following hypothetical to the VE: can lift and carry 20 pounds occasionally and 10 pounds frequently, may sit, stand and walk with normal breaks for up to six hours in an eight-hour workday, cannot climb ladders, ropes or scaffolds, may climb ramps

3

or stairs, balance, stoop, kneel, crouch and crawl occasionally, may use the left upper extremity to perform overhead work occasionally, may use the left hand for fine manipulative tasks such as fingering or pinching frequently, must avoid concentrated exposure to extreme cold, has no vision in the right eye, and must avoid exposure to unprotected heights or excavations and exposed, unprotected dangerous moving machinery. R. 581-82. In providing this hypothetical, the ALJ specifically asked Plaintiff if he was right or left-handed. R. 581. Plaintiff indicated he was right-handed. *Id.*

The VE opined that the hypothetical person would not be able to perform any past relevant work, but there would be unskilled jobs at a light and sedentary exertion level available. R. 582-83. In a second hypothetical offered by the ALJ, the claimant, in addition to the restrictions previously listed, could lift and carry 10 pounds occasionally, lift and carry lighter items on a frequent basis, stand and walk with normal breaks for a combined total of two hours in an eight-hour workday and for no more than 30 minutes at a time. R. 584. The VE opined that the hypothetical person would be limited to sedentary, unskilled work. The VE explained that such positions allow the person to stand and sit at will, but that the standing and sitting requirement was dependent upon the specific job. R. 584-85. The jobs were at eye level and would not require a person to look upward. R. 588. Additionally, the VE explicitly stated that she accommodated for work that did not require normal depth perception. R. 584. The VE identified two jobs at the

4

sedentary level, namely a telephone solicitor, with 2,050 jobs regionally and 6,150 jobs in Illinois, and an order clerk, with 19,250 jobs in Illinois. R. 583, 586.

Plaintiff's counsel asked the VE if the skill level of the telephone solicitor job was semiskilled. R. 587. The VE responded, incorrectly, that the job was unskilled with an SVP of 2. R. 588.

The relevant medical evidence presented to the ALJ revealed that in 1999, Plaintiff suffered an injury to his neck and left arm after carrying a railroad tie at work. R. 266. A magnetic resonance imaging ("MRI") revealed a large lateral disk herniation at C6-7 with narrowing and dehydration of the C6-7 disk. R. 291. Plaintiff also had moderate diffuse dorsal disk bulging and endplate spurring. *Id.* In 2000, Plaintiff underwent cervical spine fusion at the C6-7 level. R. 161, 236. In 2002, Plaintiff lost his right eye to glaucoma and later received a prosthetic eye. R. 153, 175, 236.

In 2004, Plaintiff reported chronic neck pain and paresthesia of the face and left arm for the past six months. R. 161. An x-ray from 2004 revealed degenerative changes at the base of the cervical spine. R. 170. In February 2005, he reported discomfort following the fusion in his neck and occasional tingling in his face. R. 155. In October 2005, Plaintiff fell while attempting to pour concrete into a basement and hurt his head, arm, ribcage and leg and fractured his left wrist. R. 151, 168, 254. Plaintiff reported no neck pain, and an examination revealed that his neck was supple with no anterior or posterior tenderness. R. 254-55. In December 2005, Plaintiff again fell and injured his left wrist. R. 252. Plaintiff

reported neck pain, but he did not have numbness or tingling in his extremities. *Id.* Plaintiff's examination revealed that his neck was soft and supple. *Id.* Plaintiff had pain and swelling in his wrist, but had normal sensation. *Id.* X-rays from 2004 through 2007 revealed mild degenerative changes at C5-6 with hypertrophic spurring from C3-4 through C5-6. R. 211, 273, 275, 277. In 2006, Plaintiff reported to the emergency room with complaints of neck and throat pain when he turned his head. R. 250. The emergency room doctor opined that Plaintiff's pain was attributable to an exudative pharyngitis. *Id.* An evaluation from February 2007 revealed Plaintiff's neck and spine were in normal condition and he had full strength and range of motion in his extremities. R. 181. In October 2009, Plaintiff was involved in a car accident and reported to the emergency room with complaints of head and neck pain. R. 245. The emergency room doctor opined that Plaintiff suffered a closed head injury and a cervical strain. R. 246. An x-ray in April 2010, revealed no degenerative changes in the C5-6, C6-7 and C7-T1 levels since June 2006 and October 2009. R. 271-72. An examination from September 2010 revealed that Plaintiff had tenderness in his cervical spine and his range of motion reduced by one-third. R. 455.

On June 9, 2008, Dr. Kamlesh Ramchandani performed a consultative examination of Plaintiff. R. 214. The report stated that Plaintiff complained of neck pain for the last 10 years and numbness in his left hand. *Id.* Plaintiff's physical examination showed that Plaintiff was in no acute physical distress and his gait was normal and unassisted. R. 215. Plaintiff was unable to look upward

6

and was limited in his ability to rotate his neck to either side. R. 217. His grip strength on his left side was "4/5" while his right side was "5/5." R. 215. Plaintiff lacked sensation in his left fourth and fifth fingers and his neck was stiff. *Id.* However, Plaintiff was able to make a fist, pick up objects, open and close the door, oppose his thumb to his fingers and flip pages, and he had no limitations with his wrists. R. 215, 219.

On June 25, 2008, non-examining state-agency physician Dr. Marion Penepinto completed a residual functional capacity ("RFC") assessment of Plaintiff after reviewing his file. R. 220. She found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. R. 221. He could stand, walk and sit for six hours in an eight-hour workday. *Id.* Plaintiff lacked rotation in the cervical spine and was limited to occasional pushing and pulling with upper extremities due to his complaint of neck pain. R. 222. Dr. Penepinto found that Plaintiff was limited in reaching on his left side and feeling with his left upper extremity due to his neck pain and lack of sensation in two of the fingers in his left hand. R. 233. Dr. Penepinto noted that Plaintiff was right-handed and found that Plaintiff was unlimited in his ability for gross and fine manipulation. *Id.* Plaintiff had occasional numbness in his left hand and had a slight reduction in grip strength. R. 221. Plaintiff was also limited in his depth perception and field of vision due to the loss of his right eye. R. 223. Dr. Penepinto found that Plaintiff's reported activities were partially credible, but his reports of severe limitations in walking and standing were not supported by the medical evidence. *Id.*

7

At Plaintiff's request, on March 31, 2009, Dr. Ramchandani conducted a second consultative examination of Plaintiff. R. 236. The background information Dr. Ramchandani listed for Plaintiff's 2009 examination differed slightly from the background listed for the 2008 examination. Plaintiff previously complained of neck pain for 10 years and numbness in his left hand. R. 214. At his 2009 examination, Plaintiff complained of neck pain for the past seven years, a backache for the past year, numbness in his left shoulder, left thumb and index finger and ringing in his ears for the past two years. R. 236-37. The results in Dr. Ramchandani's 2009 report were similar to the results in his 2008 examination, except that he found a slightly more limited range of motion in Plaintiff's wrists. R. 215, 219, 237, 241. Following this examination, on April 8, 2009, state-agency physician Dr. George Andrews completed a Request for Medical Advice form in which he concurred with Dr. Penepinto's RFC determination from June 28, 2008. R. 244. In concurring, Dr. Andrews noted that Plaintiff's new complaint of ringing in his ears did not impair his ability to hear and respond to normal conversation. *Id.*

On March 25, 2011, the ALJ issued his ruling finding that Plaintiff was not disabled. R. 13-23. The ALJ found that Plaintiff had multiple severe impairments, including: loss of right eye vision; degenerative disease of the cervical spine, with status post C6-C7 fusion in January 2000; degenerative disease of the lumbar spine, hips, right wrist, pelvis, ankles; hepatitis C; chronic kidney disease; and a history of polysubstance abuse and dependence. R. 17. The ALJ found that Plaintiff's impairments did not meet or medically equal a listing impairment. *Id.* The ALJ

8

concluded that Plaintiff had the RFC to perform sedentary work subject to, among other things, the following limitations: sit with normal breaks no more than six hours in an eight-hour workday, with the option of alternating from a sitting to a standing position as needed or at will; and perform fine manipulative tasks, such as fingering or pinching, with the left hand no more than frequently. *Id.* Based on the VE's testimony, the ALJ determined that Plaintiff had the RFC to do sedentary, unskilled work and could perform the jobs of telephone solicitor and order clerk. R. 16, 22.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558,

9

562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded for two reasons. Plaintiff asserts that the ALJ: 1) improperly assessed his RFC by determining he had the ability to perform fine manipulative tasks with his left hand frequently instead of occasionally; and 2) improperly relied on the VE's testimony. In light of Plaintiff's undeveloped arguments, lack of citation to case law and lack of analysis of the medical records at issue, the Commissioner argues Plaintiff has forfeited his claim of error regarding the ALJ's RFC determination. This Court agrees that the argument is forfeited and also finds some of Plaintiff's other cursory arguments forfeited. See *Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (perfunctory and undeveloped arguments that are unsupported by pertinent authority are forfeited on appeal). Plaintiff has also forfeited these cursory arguments by not adequately responding to the Commissioner's arguments in his reply brief. See *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that arguments not raised in response brief are forfeited). Nevertheless,

putting forfeiture aside, none of Plaintiff's arguments to this Court justify reversal or remand.

**A. Manipulative Limitations in the RFC**

In his RFC determination, the ALJ found that Plaintiff was limited to no more than frequent fine manipulation with his left hand. Plaintiff argues that the ALJ should have limited Plaintiff's fine manipulation to occasional use (up to one-third of work day) instead of frequent use (up to two-thirds of the work day). In support of his argument, Plaintiff recites some of the evidence in the record, but he fails to discuss how any of these records, or his own testimony, support a limitation of occasional fine manipulation. Most of the cited records do not reference Plaintiff's left hand or any related limitations, with the exception of Dr. Ramchandani's evaluation from March 2009 indicating that Plaintiff had reduced sensation to touch and pin prick in his left thumb, index finger and radial border of the left forearm. R. 238. The ALJ acknowledged this finding in making his RFC determination, but noted that the report also stated that Plaintiff was still able to make a fist, pick up objects, open and close the door, oppose his thumb to his fingers and flip pages. R. 21. Furthermore, Plaintiff's only testimony regarding his left hand, despite being questioned by his own counsel, was a reference to occasionally dropping things due to his limited depth perception and a wrist fracture he received after a fall.

Although Plaintiff complains that the ALJ cited to the medical records without analyzing Plaintiff's manipulative limitations, Plaintiff has done the same

11

by merely citing to the record without analyzing the medical records or explaining how they support his argument. *See Cabrera v. Astrue*, No. 10 C 4715, 2011 U.S. Dist. LEXIS 42624, at *36 (N.D. Ill. Apr. 20, 2011) (finding nothing improper with the ALJ's RFC determination regarding the plaintiff's hand limitations where the plaintiff cited no medical authority for her theory); *Farrah v. Colvin*, No. 12 CV 50343, 2015 U.S. Dist. LEXIS 31691, *12 n. 2 (N.D. Ill. Mar. 16, 2015) (noting that plaintiff's counsel's practice of complaining about an ALJ's alleged lack of analysis was "reminiscent of the pot calling the kettle black."). Plaintiff cites to Social Security Ruling ("SSR") 96-9p as recognizing "that the inability to perform jobs requiring bilateral manual dexterity significantly erodes the occupation base of sedentary jobs." Dkt. 14 at 10. SSR 96-9p provides that "[a]ny *significant* manipulative limitation on an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." SSR 96-9p (emphasis in original). However, "[w]hen the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource." SSR 96-9p.

In this case, the ALJ offered a hypothetical to the VE that limited the individual's fine manipulation with the non-dominant, left hand to no more than frequently. Based on this hypothetical, the VE opined that the claimant could perform unskilled jobs at a light and sedentary exertion level, which existed in significant numbers in the national economy. Although Plaintiff accuses the ALJ of failing to specifically discuss his manipulative limitations with the VE, the ALJ

12

explicitly included such limitations in the hypothetical to the VE and nothing indicates the VE did not take the entire hypothetical into account when offering her opinion.

In asserting error with the ALJ's RFC determination, Plaintiff also makes cursory arguments that the ALJ: 1) impermissibly played doctor; 2) failed to have a medical expert testify at the hearing; and 3) did not properly evaluate Plaintiff's credibility as required by SSR 96-7p, which calls for a seven-step analysis where Plaintiff's symptoms as to some impairments may be stronger than the medical evidence provides. Plaintiff cites no authority to support his first two arguments and he appears to abandon them in his reply brief. For these reasons, we find the arguments forfeited. *See Bonte*, 624 F.3d at 466. Based on this Court's review of the record, any alleged error committed by the ALJ in determining that Plaintiff was not disabled is not so obvious that Plaintiff's arguments did not require elaboration, especially in light of the fact that it was Plaintiff's burden to show he was disabled and he was represented by counsel at the hearing. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (claimant has burden in steps one through four); *Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003) (stating that an ALJ is entitled to assume that a claimant represented by counsel is making his strongest case for benefits).

The Court similarly finds Plaintiff's perfunctory argument regarding the ALJ's credibility determination not only forfeited for lack of development, but also without merit. An ALJ's credibility determination need not be flawless and should

13

be reversed only if it is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *see also Milliken v. Astrue*, 397 Fed. App'x. 218, 225 (7th Cir. 2010) (appellant has a "heavy burden of showing that the ALJ's credibility determination is patently wrong."). SSR 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p. Factors that the ALJ should consider in evaluating a claimant's credibility include the objective medical evidence and the claimant's daily activities, allegations of pain, aggravating factors, the types of treatment received, medications taken and functional limitations. SSR 96–7p. The ALJ need not necessarily address all of these factors in evaluating credibility. *Clay v. Apfel*, 64 F. Supp. 2d 774 (N.D. Ill. 1999).

Plaintiff makes little effort to indicate which of Plaintiff's symptoms are stronger than the medical evidence provides or what factors would demonstrate his credibility. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (finding forfeiture where the claimant failed to point to a single factor outlined in SSR 96-7 that would support his argument). From the arguments presented to this Court, it appears that Plaintiff only takes issue with the ALJ's evaluation of his left hand limitations. As discussed above, Plaintiff provided almost no testimony regarding his left hand limitations. Without elaboration on this argument, it is unclear what symptoms Plaintiff believes the ALJ should have found credible. Furthermore,

14

Plaintiff points to nothing in the record to indicate that the ALJ overlooked key evidence that would support a finding that Plaintiff was disabled.

Although the ALJ may not have provided as much analysis as Plaintiff would have liked, it was not patently wrong. *See Simila*, 573 F.3d at 517. In determining Plaintiff's credibility, despite including some boilerplate language, the ALJ provided support for his determination in the analysis of Plaintiff's RFC. *See Sawyer v. Colvin*, 512 Fed. App'x 603, 608 (7th Cir. 2013) (finding that the regulations anticipate overlap between the ALJ's analysis of the claimant's RFC and credibility); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir.2013) (explaining that the use of boilerplate language is not problematic when the ALJ supplies reasons for the credibility determination). The ALJ did not selectively consider the evidence, but instead provided a meaningful review of the majority of Plaintiff's testimony regarding his limitations, activities and pain and compared it to the objective medical evidence in the record. The ALJ highlighted where the medical records did not support Plaintiff's alleged symptoms.

For example, the ALJ pointed out that although Plaintiff complained of neck pain and numbness in the fingers on his left hand, the medical records did not reveal any limitations on Plaintiff's activity. Plaintiff suffered a broken left wrist in 2005, but no significant residual symptoms were reported. Plaintiff had a cervical spine fusion in 2000, but no limitations upon activity were reported during an examination and CT scan in 2004. In 2005 and 2006, Plaintiff had tenderness in his neck and wrist and reduced range of motion in the wrist, but no limitations

upon activity were reported. Records from 2006 revealed mild degenerative disk disease where Plaintiff had his neck fusion and a diagnosis of neck pain secondary to pharyngitis; however, Plaintiff's records from 2007 revealed normal range of motion in his spine and normal strength in all extremities. Furthermore, the consultative examinations from 2008 and 2009 revealed that Plaintiff had a loss of sensation in his thumb and two fingers on his left hand, but his grip strength remained at a "4/5", cervical flexion was at "45/50" degrees and Plaintiff was still able to oppose his thumb to his fingers, pick up objects and flip pages. Again, no limitations on activity were reported. In 2008 and 2009, a state-agency reviewing physician opined that Plaintiff had the capacity to perform medium work, noting that there was insufficient evidence to support any limitations as of the onset date.

Despite the lack of reported limitations in Plaintiff's medical records, the ALJ nonetheless included the majority of the limitations Plaintiff described at the hearing in the RFC determination. For instance, Plaintiff complained that he would get tired if he walked for more than 30 minutes and could only sit for 30 minutes before experiencing numbness. His RFC included restrictions for standing or walking no more than two hours in a work-day and no more than 30 minutes at a time. His RFC also stated that Plaintiff must be able to alternate from standing to sitting as needed. The ALJ also specifically confirmed with the VE that the sedentary jobs he could perform did not require Plaintiff to look upward, which Plaintiff reported caused some of his neck pain. Accordingly, the ALJ's credibility

determination in discounting some of Plaintiff's claims of disabling symptoms was based on and supported by substantial evidence in the record.

**B. Reliance on the Vocational Expert**

Plaintiff also argues that the ALJ improperly relied on the VE's testimony. Specifically, Plaintiff argues that the two sedentary jobs offered by the VE could not be performed by Plaintiff based on the ALJ's RFC determination.

The ALJ determined that Plaintiff retained the RFC to perform sedentary, unskilled work with certain limitations. The VE offered two jobs that Plaintiff would be able to perform, telephone solicitor and order clerk. Contrary to what the VE testified to at the hearing, the Dictionary of Occupations Titles ("DOT") classifies the telephone solicitor job, DOT 299.357-014, as semi-skilled with an SVP of 3. Therefore, the Court agrees with Plaintiff that he could not perform this job under the ALJ's RFC determination.

However, the VE also testified that Plaintiff could perform the order clerk position, DOT 209.567-014, which is unskilled with an SVP of 2. Despite this, Plaintiff still argues that he would not be able to perform this job because the description suggests a considerable amount of "manipulative activity (and depth perception from an individual such as Plaintiff with only one eye)." Dkt. 14 at 11. The DOT provides the following description for order clerk:

> Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu

17

items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.). GOE: 07.04.02 STRENGTH: S GED: R3 M1 L2 SVP: 2 DLU: 77

DOT 209.567-014, *available at* http://www.occupationalinfo.org/20/209567014.html.

The Commissioner cites to an extended description of the order clerk position, which appears to include some of the explanations provided by *The Revised Handbook for Analyzing Jobs* (1991), *available at* http://www.vocational.org/Analysis/RHAJ.pdf. In this extended description, it states that an order clerk requires minimal finger and manual dexterity and does not require depth perception. DICOT 209.567-014, 1991 WL 671794 (G.P.O). The position only requires frequent handling and fingering, but no feeling is required. *Id.* Accordingly, the VE's testimony that Plaintiff could perform this job is not in conflict with the DOT description. Furthermore, any reliance by the ALJ on the telephone solicitor jobs was harmless in light of a significant number of order clerk jobs in the national economy, with 19,250 available in Illinois. *See Stanley v. Astrue*, 410 Fed. App'x. 974, 976 (7th Cir. 2011) (finding 1,000 or more jobs to be in significant numbers); *Burton v. Colvin*, 1:12–cv–676–DKL–WTL, 2013 WL 5486788, at *4 (S.D. Ind. Sept. 30, 2013) (finding any error by the ALJ's reliance on the VE's

testimony about a job the claimant might not be able to perform harmless where there were 9,000 available jobs in Indiana that satisfied the ALJ's RFC determination).

Plaintiff also takes issue with the fact that the ALJ never discussed Plaintiff's manipulative limitations and limited depth perception with the VE. The Court finds this argument unpersuasive because although there was no explicit discussion, the hypothetical posed by the ALJ adequately portrayed both of these limitations. The VE testified that with those limitations, Plaintiff could not perform his past work, but could perform the job of an order clerk and specifically noted that she accommodated for work that did not require normal depth perception. The Court also notes that counsel had the opportunity to question the VE about Plaintiff's specific limitations at the hearing, but failed to do so. Accordingly, remand is not warranted on these grounds.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Dkt. 14) is denied, and the Commissioner's motion (Dkt. 19) is granted.

Date: March 20, 2015    By: _____
                            Iain D. Johnston
                            United States Magistrate Judge